UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERON WRIGHT, | ) |
| Petitioner, | ) |
| v. | ) No. 04 C 6579 |
| UNITED STATES OF AMERICA | ) Judge Joan H. Lefkow |
| Respondent | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Deron Wright ("Wright") has filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated below, Wright's petition is denied.

### BACKGROUND

Wright was charged by indictment in this case with conspiracy to possess with intent to distribute and distribution of more than one kilogram of mixtures containing phencyclidine ("PCP"), in violation of 21 U.S.C. § 846 (Count One) and four additional counts of distribution in violation of 21 U.S.C. § 841(a)(1). On February 20, 2003, Wright entered into a plea agreement with the United States Attorney. The plea agreement provided, *inter alia*, that in exchange for dismissal of the distribution counts, Wright would plead guilty to the conspiracy count. The plea agreement anticipated an offense level 36 and a criminal history category I. In addition, Wright waived in the plea agreement the right to appeal the sentence imposed and the right to challenge his sentence or the manner in which it was determined in any collateral attack,

1

including a motion brought under 18 U.S.C. § 2255 ("a 2255 petition").[1] Wright did not stipulate that he was a manager or supervisor within U.S.S.G. 3B1.1(c). On February 20, 2003, Wright appeared before this court and entered a plea of guilty to Count One. The court ruled that Wright was a manager or supervisor and it was undisputed that Wright's criminal history category was not I but III based on convictions discovered by the government subsequent to entry of the plea agreement. Based on an offense level 36 and criminal history category III, Wright's Sentencing Guideline range was 210 to 262 months in custody. On October 10, 2003, this court sentenced Wright to the minimum permitted by the Guidelines, 210 months in custody and dismissed the distribution counts on motion of the government.

## DISCUSSION

Wright presents four arguments in support of his original § 2255 petition: (1) his trial counsel provided constitutionally ineffective assistance during plea negotiations and at sentencing; (2) he did not knowingly and intelligently plead guilty because the court and counsel failed to inform him of the nature of the charges and the consequences of pleading guilty; (3) he was deprived of his right to a voluntary and knowing plea agreement and fair and meaningful review because counsel and the court failed to advise him or explain to him his waiver-of-appeal right; and (4) his sentence was in violation of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L Ed. 2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L Ed. 2d 403 (2004).[2] Wright discusses the first three claims

---

[1] Excepted from this waiver was "a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver [of appeal and collateral attack] or its negotiation." Plea Agreement ¶ 12.

[2] The government argues that Wright expressly waived his right to challenge his sentence under § 2255, and thus, his motion should be denied. Wright's motion raises claims of involuntariness and ineffective assistance of counsel relating to the execution of the plea agreement generally. Since the Seventh Circuit has advised "time and

2

separately, while the government treats them as a single claim. Since the claims rely on common allegations and each depend on the inadequacy of the plea colloquy, the court follows the latter's approach.

Additionally, in his supplemental § 2255 petition, Wright argues that his sentence exceeds the statutory maximum for Schedule III controlled substances.

I.  **Ineffective Assistance of Counsel and Inadequacy of the Plea Colloquy**

Wright alleges that his counsel made four errors that denied him effective assistance of counsel during plea negotiations and at sentencing: (1) his counsel fostered the misimpression that he would receive a sentence not to exceed ten years by failing to advise and explain (a) the elements of the crimes charged in the indictment, (b) the Pre-sentence Investigation Report ("PSR"), (c) the application of the Sentencing Guidelines, (d) "the effect that the imposition of the mandatory supervised release term would have on the total time he could be imprisoned," and (e) "the effect that the drug quantity could have on his sentence;" (2) his counsel pressured him to plead guilty by falsely advising him and his family that his ill father would receive a sentence of home confinement in exchange for his guilty plea; (3) his counsel failed to advise him that the Sentencing Guidelines recommended a sentence of approximately seventeen years, whether his guilt was determined by trial or by plea; and (4) his counsel failed to move for a downward departure and to challenge the government's calculation of his criminal history category. Wright then contends that the court's plea colloquy was insufficient to remedy these errors because it further misled him regarding his possible sentence by making repeated references to a ten-year

---

again that a waiver of appeal stands or falls with the rest of the bargain," *United States* v. *Whitlow*, 287 F.3d 638, 640 (7th Cir. 2002), Wright's claims relate directly to his waiver. Accordingly, the court reaches the merits of Wright's claims.

3

mandatory minimum sentence and it "failed to determine that the Defendant understood the nature of the charges, and the effect of any supervised release as well as the application of the Guidelines." Wright maintains that as a result of counsel's and the court's errors, he did not enter a voluntary, knowing, and intelligent guilty plea.

In *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L Ed. 2d 203 (1985), the Supreme Court extended the two-part standard for proving ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L Ed. 2d 674 (1984) to challenges of guilty pleas. Under *Strickland*, to prevail on his ineffective assistance of counsel claims, the defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L Ed. 2d 674 (1984). To satisfy the second prong of the *Strickland* test in a guilty plea setting, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See also Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) (to show ineffective assistance in the context of a guilty plea, a defendant must demonstrate that counsel's advice regarding the plea was objectively unreasonable and that there is a reasonable probability that, but for counsel's error, the defendant would not have pled guilty but would have insisted on going to trial).

Even if the court accepts Wright's allegations regarding his counsel's failure to adequately communicate with him, Wright cannot show that, absent counsel's erroneous or incomplete advice, he would not have pled guilty but would have instead insisted on going to

4

trial. At his change-of-plea-hearing, the court advised Wright that he faced a minimum term of imprisonment of ten years and a maximum term of imprisonment of life; that the charge to which he was pleading guilty also carried a term of supervised release of at least five years and up to any number of years, including life; that his sentence could be more severe than he might be expecting; that the court alone would ultimately decide what his sentence would be; that any Sentencing Guideline computation discussion with the government was not part of the plea agreement; that the government reserved the right to challenge the Sentencing Guideline computations prepared by the probation office; that even if the court's Sentencing Guideline computation was greater than he expected, he would still not be permitted to withdraw his guilty plea; and that the court had the authority in some circumstances to depart from the Sentencing Guideline computation and to impose a sentence more severe than that called for by the Sentencing Guidelines. Thus, contrary to Wright's allegations, the court advised Wright in detail and in multiple ways the possible sentence he faced, how it would be calculated, and that he could not rely on his counsel's or the government's prediction about a possible sentence when he entered his plea. Under oath, Wright stated that he understood the court's advisements and that he still wished to plea guilty. "In doing so, he was affirming that his guilty plea was not made in reliance of a particular sentence. He cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted. He specifically disclaimed that risk at his change of plea hearing." *United States* v. *Bethel*, 458 F.3d 711 (7th Cir. 2006).

Wright's allegations regarding false promises his counsel made him and his family to induce his guilty plea are similarly belied by his plea colloquy. Also at the change-of-plea-

5

hearing, the court asked Wright if the plea agreement represented the only and complete agreement or understanding he had with the government, and Wright answered in the affirmative. The court then went further and asked Wright whether anyone had made any other or different promise or assurance of any kind in an effort to persuade him to plead guilty, and Wright answered in the negative. Wright states in his petition that his counsel instructed him not to make any reference to the alleged promises during his plea colloquy, but he fails to put forth any evidence that would allow the court to meaningfully assess that claim. For instance, Wright fails to identify when or where the alleged instruction was given or whether there were any witnesses to it. More importantly, though, neither Wright, nor his sister Renee Wright, who also submitted an affidavit regarding counsel's alleged promise, included this particular allegation in their affidavits. Wright thus fails to make a sufficient showing to refute the veracity of his responses in court and to undermine the weight properly accorded his plea agreement.

Wright's plea colloquy further demonstrates that the court adequately advised Wright regarding his waiver of appeal in the plea agreement. Again at the change of plea hearing, Wright and the court engaged in the following exchange:

> The Court: And then in this plea agreement on page 8, paragraph 12, you are giving up rights to appeal the sentence that I impose. So normally you would have a right to appeal the sentence even if you plead guilty and waive your right to a trial, but by this paragraph you are giving up the right to appeal any sentence within the maximum provided in the statute of conviction or the manner in which the sentence was determined in exchange for the concessions made by the United States in the plea agreement.
>
> Do you understand what that means?
>
> Wright: Yes
>
> The Court: Okay. And then you're also waiving your right to challenge the sentence

or the manner in which it was determined in a collateral attack with the limitation of it does not apply to a claim of involuntariness of the plea or ineffective assistance of counsel which relates directly to this waiver or to its negotiations.

So it is a very narrow exception. Essentially you're giving up a right to file a petition saying that once you're in custody that you're in custody in violation of your constitutional rights, which we call a habeas petition or post-conviction remedy.

Do you understand that?

Wright: Yes.

The Court: Have you talked about that with Mr. Willis, what that means?

Wright: We have not discussed that yet.

The Court: You have not?

Wright: No.

The Court: Do you believe though now that based on my explanation you know what it is?

Wright: Yes.

This exchange between Wright and the court leaves no doubt that Wright was properly advised of the consequences of waiving his right to appeal his sentence. If Wright had been at all unclear, he could have exercised the option provided by the court to further discuss the matter with his counsel. Wright declined that invitation, and thus, his claim of ignorance is foreclosed.

In sum, having reviewed the plea colloquy, there is no basis to conclude that Wright unknowingly and involuntarily entered his guilty plea either because he received ineffective assistance of counsel or because the court failed to comply with Rule 11 of the Federal Rules of Criminal Procedure ("Fed.R.Crim.P."). Even if Wright's counsel's performance was deficient

7

(and the court expresses no opinion on that issue), the court's strict compliance with Rule 11, Fed.R.Crim.P., and otherwise thorough discussion of, among other things, the charges pled in the indictment, the consequences of pleading guilty, the manner in which his sentence would be calculated, and his waiver of appeal in the plea agreement, cured any prejudice Wright suffered as a result. Accordingly, Wright is not entitled to habeas corpus relief on the basis of either counsel's or the court's alleged failure to properly advise him regarding the consequences of pleading guilty.

Wright further claims that he was denied effective assistance of counsel because his attorney failed to move for a downward departure under section 5H1.6 of the Sentencing Guidelines based on his "extraordinary family circumstances." Wright specifically alleges that, at the time of his sentencing, he was the sole provider for his wife and five children. Wright cannot demonstrate any prejudice resulting from his counsel's alleged deficient performance because he has presented no evidence that a motion on those grounds would have been successful. The Sentencing Guidelines disfavor departures based on family responsibilities, and thus, a departure is not permitted on that basis except in extraordinary circumstances. *United States v. Carrasco*, 313 F.3d 750, 756 (2d Cir. 2002). Extraordinary circumstances exist where the family is uniquely dependent on the defendant's ability to maintain existing financial and emotional commitments. *United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994) (citing, e.g., *United States v. Johnson*, 964 F.2d . 124, 129 (2nd Cir. 1992) (finding family circumstances of single mother who was solely responsible for the upbringing of her three young children, including an infant, and the young child of her institutionalized daughter to be extraordinary). The mere fact that Wright cared for his five children is insufficient to rise to the level of

extraordinary circumstances. *See United States v. Faria*, 161 F.3d 761, 762 (2d Cir. 1998) (reversing downward departure where defendant had three dependent children). Wright offers no evidence that there is anything unique about his family's background, health or well-being, or that his wife or other family members were unable or unwilling to care for his children. As such, there is nothing to indicate that the hardship imposed on his family due to his imprisonment was atypical, insofar as virtually every defendant can no doubt establish that their absence will be a heavy burden on their family. Thus, since a motion for a downward departure would not have been granted had it been filed, Wright's counsel's failure to file such a motion was not prejudicial. *See e.g. Allen v. Nix*, 55 F.3d 414, 417 (8th Cir. 1995) (where a motion is unlikely to succeed, there is no ineffective assistance of counsel for failure to file such a motion).

## II. *Apprendi* Violation

Wright also argues that his sentence violated the Supreme Court's holding in *Apprendi* because a jury did not determine, beyond a reasonable doubt, all of the facts giving rise to his sentence. Wright identifies two instances in which the court found facts that enhanced his sentence: (1) the court determined that he was responsible for 10 to 30 kilograms in finding that his base offense level was 36; and (2) the court determined that he had exercised supervisory control over one of his co-defendants in finding that the two-level enhancement for being an organizer or leader of criminal activity should apply.

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L Ed. 2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court has since made clear

that the statutory maximum for *Apprendi* purposes is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *See Blakely* v. *Washington*, 542 U.S. 296, 304, 124 S. Ct. 2531, 159 L Ed. 2d. 403 (2004).

In this case, the court's Sentencing Guidelines computations are fully supported by Wright's stipulations in his plea agreement and do not require any judicial fact-finding. In paragraphs 5 and 6(b) of the plea agreement, Wright agreed that "[t]he amount of PCP involved in the offense of conviction for which the defendant is accountable is between 10 and 30 kilograms." Thus, the court's finding that Wright's base offense level was 36 was based solely on facts admitted by Wright. Likewise, while the court made the legal determination that a two-level enhancement was appropriate, it did so based solely on the facts agreed to by Wright in paragraph 5 of the plea agreement and reasonable inferences drawn therefrom. In the plea agreement, Wright admitted that he arranged the meetings with his principal purchaser; he supplied the purchaser with the PCP; he received the money from the sale of the PCP; and his brother and co-defendant, Dan Wright, Jr., accompanied him to the meetings during which he sold the PCP. Those admitted facts amply supported the court's application of the two-level enhancement. To the extent that the court relied on facts outside of Wright's plea agreement, it merely took judicial notice pursuant to Federal Rule of Evidence 201 and *Scholes* v. *Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) of facts recited in the plea agreement of Dan Wright, Jr. Thus, since Wright's sentence was not based on facts found by the court but instead on facts either admitted by the defendant or subject to judicial notice, his reliance on *Apprendi* is unavailing.

## III. Sentence in Excess of Statutory Maximum

Wright was convicted of conspiracy to possess with intent to distribute and distribution of more than one kilogram of mixtures containing phencyclidine ("PCP"), in violation of 21 U.S.C. § 846. Under § 846, "any person who attempts or conspires to commit ... [the offense] ... shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Accordingly, Wright is subject to the penalties as provided for in 21 U.S.C. § 841(b), which governs the sentencing of defendants convicted of conspiring to violate § 841(a). And since Wright admitted that the quantity of drugs attributable to him was 10 to 30 kilograms, he is properly sentenced under subsection (B). A person sentenced under that subsection is subject to a term of imprisonment not less than five years but not more than 40 years. Thus, since Wright was sentenced to 210 months, or 17.5 years, his sentence did not exceed the statutory maximum.

## CONCLUSION

For the reasons stated above, Wright's § 2255 petition to vacate, set aside, or correct his sentence [#1], including his amended and supplemental petition [#14] is denied. The case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: October 17, 2006